1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

KATINA KRAMER,

11

                              Plaintiff,

12

            v.

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

14

15

                              Defendant.

16

CASE NO. 14-cv-05449 RJB JRC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

Noting Date: February 13, 2015

17

18

19

20

        This matter has been referred to United States Magistrate Judge J. Richard

Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261,

271-72 (1976).  This matter has been fully briefed (*see* Dkt. 12, 13, 16).

21

22

23

24

        After considering and reviewing the record, the Court finds that the ALJ erred by

failing to consider significant, probative evidence from examining psychologist, Dr.

Krueger. Because including limitations opined by Dr. Krueger would have altered

plaintiff's RFC and could have led to a different ultimate conclusion regarding disability, it was not harmless error.

Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation.

<u>BACKGROUND</u>

Plaintiff, KATINA KRAMER, was born in 1971 and was 37 years old on the alleged date of disability onset of December 10, 2008 (*see* AR. 276-84). Plaintiff has a Bachelor of Arts degree in general studies (AR. 49).   Plaintiff has work experience as storekeeper, duty manager, recreation specialist and assistant athletic director while in the Navy (AR. 340-47).  She has worked as a direct support counselor and office manager (*id.*) and has some work experience warehousing and with brush cutting (AR. 60-63).

According to the ALJ, plaintiff has at least the severe impairments of "depression, anxiety, [and] substance abuse (20 CFR 404.1520(c) and 416.920(c))" (AR. 21).

At the time of the hearing, plaintiff was living alone in her own home (AR. 51), but the home was in foreclosure (AR. 58).

<u>PROCEDURAL HISTORY</u>

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 95-106, 107-18, 121-33, 134-46, 147-60, 161-74). Plaintiff's requested hearing was held before Administrative Law Judge Kimberly Boyce

1 ("the ALJ") on September 11, 2013 (*see* AR. 39-92). On October 8, 2013, the ALJ issued

2 a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to

3 the Social Security Act (*see* AR. 15-38).

4    On April 2, 2014, the Appeals Council denied plaintiff's request for review,

5 making the written decision by the ALJ the final agency decision subject to judicial

6 review (AR. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

7 seeking judicial review of the ALJ's written decision in June, 2014 (*see* Dkt. 1, 3).

8 Defendant filed the sealed administrative record regarding this matter ("AR.") on

9 September 16, 2014 (*see* Dkt. 9, 10).

10    In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or

11 not the ALJ erred when she failed to mention the opinions of examining psychologist

12 Keith Krueger, Ph.D.; (2) Whether or not the ALJ gave specific and legitimate reasons

13 for rejecting the opinions of Kimberly Wheeler, Ph.D.; and (3) Whether or not the ALJ

14 gave legally sufficient reasons for rejecting the testimony of plaintiff's friend, Dore King

15 (*see* Dkt. 12, p. 1).

16

17                    STANDARD OF REVIEW

18    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

19 denial of social security benefits if the ALJ's findings are based on legal error or not

20 supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

21 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

22 1999)).

23

24

1

<u>DISCUSSION</u>

2

    (1)    **Whether or not the ALJ erred when she failed to mention the opinions**

3

             **of examining psychologist Keith Krueger, Ph.D.**

4

    The ALJ failed to discuss the opinions of Dr. Krueger, who examined plaintiff

5

twice. According to the Ninth Circuit, the Commissioner "may not reject 'significant

6

probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th

7

Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting*

8

*Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision

9

must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.  In

10

addition, when an opinion from an examining or treating doctor is contradicted by other

11

medical opinions, the treating or examining doctor's opinion can only be rejected "for

12

specific and legitimate reasons that are supported by substantial evidence in the record."

13

*Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d

14

1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

15

    Defendant argues that plaintiff has not demonstrated any harm from the error;

16

however, the Ninth Circuit recently concluded that it was not harmless error for the ALJ

17

to fail to discuss a medical opinion. *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012)

18

("the ALJ's disregard for Dr. Johnson's medical opinion was not harmless error and Dr.

19

Johnson's opinion should have been considered") (*citing* 20 C.F.R. § 404.1527(c) (noting

20

that this Ruling requires the evaluation of "every medical opinion" received)). According

21

to the Ninth Circuit, when the ALJ ignores significant and probative evidence in the

22

record favorable to a claimant's position, such as an opinion from an examining or

23

24

treating doctor, the ALJ "thereby provide[s] an incomplete residual functional capacity [RFC] determination." *See id.* at 1161. Furthermore, when the RFC is incomplete, the hypothetical question presented to the vocational expert relied on at step five necessarily also is incomplete, "and therefore the ALJ's reliance on the vocational expert's answers [is] improper." *See id.* at 1162.

Similarly, according to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20.

In this matter, among other opinions, Dr. Kreuger opined following a mental status examination of plaintiff that her "[a]nxious self-doubts interfere frequently, so that work product would be inefficient/ inconsistent" (*see* AR. 443). This is significant, probative evidence that the ALJ erred in failing to discuss. *See Flores, supra*, 49 F.3d at 571. Dr. Krueger also opined that although plaintiff indicated that she possibly had a job lined up, "she is fragile, everything must work out just right for her to not 'fall apart' because of her own perceived inadequacies" (*see* AR. 443).

Because these opinions of Dr. Krueger were not accommodated into plaintiff's RFC, the ALJ's error is not harmless error. *See Hill*, *supra,* 698 F.3d at 1160.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th

Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). Courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

As plaintiff's limitation that her work product would be inefficient and inconsistent was not accommodated into plaintiff's RFC, and was not included into the hypothetical presented to the vocational expert, it is unclear what effect this limitation has on her ability to perform her past relevant work or other work in the national economy (*see* AR. 443). However, it is clear that the failure to include this limitation affected the ultimate disability determination, and therefore is not harmless error. *See Molina*, *supra,* 674 F.3d at 1115.

**(2)    Whether or not the ALJ gave specific and legitimate reasons for rejecting the opinions of Kimberly Wheeler, Ph.D.**

The Court already has concluded that this matter should be reversed and remanded for further consideration, *see supra*, section 1. However, a brief review of the record demonstrates that the opinion of examining doctor, Dr. Wheeler, should be evaluated anew, as well, following remand of this matter.

1    Although the ALJ rejected Dr. Wheeler's opinion with a finding that her opinion

2    was not consistent with opinions from non- examining doctors (*see* AR. 29), as an

3    examining physician's opinion is "entitled to greater weight than the opinion of a non-

4    examining physician," this fact merely indicates the standard by which Dr. Wheeler's can

5    be rejected. *See Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. §

6    404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has

7    examined you than to the opinion of a source who has not examined you"). As stated

8    previously, a contradicted opinion from a doctor can only be rejected "for specific and

9    legitimate reasons that are supported by substantial evidence in the record." *Lester*,

10   *supra*. 81 F.3d at 830-31 (citations omitted).

11

12       The ALJ faults Dr. Wheeler for not addressing "claimant's contradictory

13   statements made during the examination such as the claimant's report that her 'mom does

14   all other chores;' which is not consistent with her statements made later in the same

15   examination that she 'doesn't talk to parents – very angry at mom.'"(*see* AR. 29).

16   However, claimant's report that her mother does chores, but that she nevertheless is

17   angry with her and does not talk to her are not inconsistent. An ALJ's decision must be

18   based on substantial evidence in the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214

19   n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

20       Similarly, the ALJ's finding that Dr. Wheeler relies heavily on plaintiff's

21   subjective complaints is not based on substantial evidence in the record (*see* AR. 29).

22   Although there is some unavoidable reliance on plaintiff's report, Dr. Wheeler relies

23   additionally on plaintiff's performance on a mental status examination ("MSE"). For

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 7

example, Dr. Wheeler noted that plaintiff's score on the Beck Depression Inventory II was 40, which she noted was "easily into severe range" and which she opined was "congruent with presentation," noting that plaintiff was "[a]bjectly miserable" (*see* AR. 453). Consistent with this opinion, Dr. Wheeler noted that plaintiff was making whimpering noises while she was thinking; was tremulous; and that her affective lability was "extreme" (*see id.*). Dr. Wheeler indicated that she had observed plaintiff's markedly severe symptoms of shame, as she exhibited self-loathing; and, of tearfulness (*see* AR. 449). Dr. Wheeler also indicated that she observed plaintiff's severe symptoms of depression, which Dr. Wheeler opined was "severe presently;" and, of plaintiff's low self-esteem, as Dr. Wheeler opined that plaintiff was "unable to present herself appropriately" (*see id.*). In addition, during plaintiff's MSE, Dr. Wheeler noted that plaintiff's affect was labile; her mood was dysphoric and anxious; her thought process was tangential and she derailed; her thought content was self-deprecating, noting that there was "so much shame;" her attention was poor; and, her concentration was not within normal limits as she erred when doing serial 7s, was unaware of her errors and demonstrated an effortful performance.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford

University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56,

60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

For the stated reasons and based on the record as a whole, the Court concludes that the opinion of Dr. Wheeler should be evaluated anew following remand of this matter.

> **(3)     Whether or not the ALJ gave legally sufficient reasons for rejecting the testimony of plaintiff's friend, Dore King.**

The Court already has concluded that this matter should be reversed and remanded for further consideration, *see supra*, section 1. For this reason and based on the record as a whole, the Court concludes that the lay evidence should be evaluated anew following remand of this matter.

CONCLUSION

The ALJ failed to discuss significant, probative evidence provided by examining doctor, Dr. Krueger, relevant to the ultimate disability determination. In addition, the ALJ erred in evaluating the opinion of examining doctor, Dr. Wheeler, by failing to provide specific and legitimate reasons for failing to credit fully her opinions.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report

1    and Recommendation.  **JUDGMENT** should be for **plaintiff** and the case should be

2    closed.

3          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4    fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

5    Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

6    purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

7    Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

8    matter for consideration on February 13**,** 2015, as noted in the caption.

9          Dated this 20th day of January, 2015.

10

11

12

J. Richard Creatura
United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24